NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SPINELLO COMPANIES, | : | |
| | : | Civil Action No. 05-5075 (SRC) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| METRA INDUSTRIES, INC., et al., | : | MEMORANDUM OPINION |
| | : | AND ORDER |
| Defendants. | : | |
| | : | |

**BONGIOVANNI, United States Magistrate Judge**

This matter comes before the Court upon Motion by Kenneth Cesta, Esq., counsel for Defendants, Metra Industries, Inc. and Gary Stivaly (hereinafter "Defendants"), seeking to disqualify J. Michael Riordan and the law firm of Bressler, Amery and Ross, counsel for Plaintiff Spinello Companies and Counterclaim Defendants Emil Solimine and Emar Group, Inc. (hereinafter "Plaintiffs"). Plaintiffs oppose said motion. For the reasons stated below, the Motion to Disqualify Counsel is DENIED.

**I.   FACTUAL BACKGROUND**

In 1997, Emil Solimine approached Gary Stivaly, owner of Metra Industries, about purchasing Spinello Construction, an ailing construction company then owned by James Spinello. Mr. Solimine and Mr. Stivaly discussed the formation of a joint venture to finance the purchase of Spinello Construction. They submitted an offer to purchase Spinello Construction on January 23, 1998, but were turned down by Spinello's minority shareholders.

In early 1998, Spinello Construction filed for Chapter 11 bankruptcy. Mr. Solimine and

Mr. Stivaly agreed to attempt to purchase the assets of Spinello Construction through the bankruptcy court. In June 1998, a bid for the assets was submitted to the bankruptcy trustee on behalf of Metra Industries, Mr. Stivaly and Mr. Solimine. Thereafter, Mr. Stivaly and Mr. Solimine agreed to form a joint venture for the purchase of Spinello Construction's assets and to form a new holding company owned equally by Mr. Stivaly and Mr. Solimine. The new holding company was to consist of the new Spinello Companies and Metra Industries and would be able to perform all aspects of the water and sewer construction and repair industry. The bankruptcy reorganization agreement provided for the issuance of fifty shares of common stock in Spinello Companies, the newly formed Spinello entity, each to Mr. Stivaly and Mr. Solimine.

Metra and Spinello Companies formed EGS Holding, Inc. in 1998. Mr. Stivaly was to deposit all of Metra's stock into the holding company and Mr. Solimine was to contribute capital. However, Mr. Stivaly never deposited the Metra stock into the holding company to avoid the forfeiture of accrued tax deferrals to Metra's benefit. The ownership of the holding company was subsequently restructured giving Mr. Solimine 95% ownership and Mr. Stivaly 5% ownership. The profits of EGS Holding, Inc. were still to be split 50-50. As part of the joint venture, Mr. Stivaly would be president of Spinello Companies and continue to run Metra Industries.

Shortly after acquiring the assets of Spinello Construction, Messrs. Stivaly and Solimine sought to bring suit (hereinafter "CEPS litigation") against a number of former Spinello Construction employees who, while employed by Spinello Construction, formed CEPS Construction and diverted projects and revenue away from Spinello and to CEPS. All of the projects at issue in the CEPS litigation took place before the formation of Spinello Companies. At the suggestion of Mr. Solimine, Mr. Stivaly contacted and retained J. Michael Riordan and

Bressler, Amery and Ross as attorneys for Spinello Companies in the CEPS litigation. Mr. Riordan was familiar with the assets of Spinello Construction because he represented James Spinello during the bankruptcy proceedings.

During the course of the CEPS litigation, Mr. Stivaly was deposed in his capacity as the president of Spinello Companies. In preparing for his deposition, Mr. Stivaly met with Mr. Riordan to discuss his testimony, including his ownership and operation of Metra Industries. The CEPS litigation eventually settled and Mr. Stivaly and Mr. Solimine each signed the release, individually and on behalf of Spinello Companies.

In early 2001, Mr. Stivaly, on behalf of Metra Industries, retained Mr. Riordan and his law firm to draft a Confidentiality Agreement for Metra employees. The Confidentiality Agreement dealt specifically with the technological and business techniques of Metra. Mr. Riordan maintains that Mr. Stivaly disclosed no client confidences in the preparation of the Confidentiality Agreement.

In 2003, Mr. Riordan was again retained to represent Spinello Companies and Metra Industries regarding a subpoena duces tecum served by the United States Attorney's Office for the District of New Jersey. The subpoena sought records for payments to the City of Newark, New Jersey for security, police and traffic services. According to Mr. Riordan, Metra Industries did not have any documents applicable to the subpoena.[1]

Spinello Companies brought the case at issue against Defendants for usurpation of business opportunities, misappropriation of assets, failure to distribute profits and conversion of funds. Defendants counterclaimed against Spinello Companies, Emil Solimine and Emar Group,

---

[1] Another attorney with Bressler, Amery and Ross also represented Spinello Companies regarding a similar subpoena it received from the United States Attorney's Office. The second attorney may have also dealt with the subpoena received by Metra Industries.

Inc. for fraud, breach of contract, and breach of fiduciary duties arising out of the joint venture. On December 9, 2005, Defendants filed a Motion to Disqualify J. Michael Riordan and Bressler, Amery and Ross as counsel for Plaintiffs.  While this Motion was pending, Mr. Riordan has left Bressler, Amery and Ross and joined Greenberg Traurig.  Therefore, the Motion to Disqualify Bressler, Amery and Ross is moot.

## II.   STANDARD OF REVIEW

Defendants allege that Mr. Riordan should be disqualified as counsel for Plaintiffs under New Jersey Rules of Professional Conduct 1.7, 1.9 and 3.7 and disqualification should be imputed on the law firm of Greenberg Traurig under Rule of Professional Conduct 1.10.  The United States District Court for New Jersey has adopted the Rules of Professional Conduct for the State of New Jersey pursuant to L.Civ.R 103.1(a).  Generally speaking, Motions to Disqualify are viewed with disfavor as disqualification is a drastic remedy with broad, sometimes devastating implications. Carlyle Towers Condominium Ass'n v. Crossland Sav., 944 F.Supp. 341, 345 (D.N.J.1996).

### A.   Disqualification of J. Michael Riordan under Rule 1.7

Mr. Stivaly and Metra Industries are not current clients of Mr. Riordan and no concurrent conflict of interest exists.  Rule of Professional Conduct 1.7 provides:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by the personal interest of the lawyer.

>(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
>>(1) each affected client gives informed consent, confirmed in writing, after full disclosure and consultation, provided, however, that a public entity cannot consent to any such representation. When the lawyer represents multiple clients in a single matter, the consultation shall include an explanation of the common representation and the advantages and risks involved;
>
>>(2) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
>>(3) the representation is not prohibited by law; and
>
>>(4) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal. RPC 1.7.

Defendants maintain that they had an ongoing relationship of representation with Mr. Riordan that would rise to the level of a conflict of interest under Rule 1.7. They allege that the ongoing representation and relationship between Defendants and Mr. Riordan created a concurrent client relationship with Plaintiffs. Defendants, therefore, conclude that Mr. Riordan brought this action against a current client creating a clear conflict of interest.

However, a party that retains the same counsel on two or three separate occasions over a two-year period between 2001 and 2003 with no representation in the two years before the institution of the current law suit does not qualify as a present or current client relationship for purposes of Rule 1.7. See Manior-Electroalloys Corp. v. Amalloy Corp., 711 F.Supp. 188, 194(D.N.J. 1989). The representation of Defendants was not consistent and periodic over a number of years. The only relevant representations occurred in 2001 with regard to the Confidentiality Agreement and in 2003 with regard to the subpoena. Neither instance amounted

to long term contact nor ongoing representation. Such contact was very limited and would not rise to the level of an ongoing, present client relationship. Further, Mr. Riordan never represented Mr. Stivaly personally. Absent an ongoing attorney client relationship, a concurrent conflict of interest cannot exist. See R.P.C. 1.7.

  **B.**  **Disqualification of J. Michael Riordan under Rule 3.7**

Mr. Riordan is not a necessary witness at trial and not in violation of Rule 3.7. Rule 3.7 provides:

> (a) a lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
> > (1) the testimony relates to an uncontested issue;
> >
> > (2) the testimony relates to the nature and value of legal services rendered in the case; or
> >
> > (3) disqualification of the lawyer would work substantial hardship on the client.
>
> (b) a lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by RPC 1.7 or RPC 1.9.

Defendants maintain the Mr. Riordan is a likely witness at trial because he has personal knowledge of the ownership structure and the financial arrangements that made up the joint venture. However, Mr. Riordan was not counsel to either Mr. Solimine or Mr. Stivaly in the formation of the joint venture. All knowledge on the part of Mr. Riordan regarding the joint venture came directly from his conversations with Mr. Solimine and Mr. Stivaly. Clearly, Mr. Solimine and Mr. Stivaly have personal knowledge of these same facts communicated to Mr. Riordan. The purported "necessary" testimony of Mr. Riordan sought by the Plaintiffs is well within the personal knowledge of the parties to this action. Therefore, the testimony of Mr.

Riordan is not necessary and does not warrant disqualification under Rule 3.7.

    **C.**    **Disqualification of J. Michael Riordan under Rule 1.9**

Finally, Defendants argue that Mr. Riordan should be disqualified under Rule 1.9. Rule 1.9 provides in relevant part:

> (a) a lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing.
> . . . .
> (c) a lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
>     (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
>
>     (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.
> R.P.C. 1.9.

The New Jersey Supreme Court applies a "substantial relationship" test for determining disqualification under Rule 1.9. <u>Reardon v. Marlayne, Inc.</u>, 416 A.2d 852 (N.J.1980). Under the substantial relationship test, the movant must prove (1) the existence of a past attorney client relationship between the movant and the attorney sought to be disqualified; (2) that the interests of the attorney's current client are materially adverse to the movant; and (3) that the current representation involves the same or a matter substantially related to the former representation. <u>Id.</u>; <u>Host Marriott Corp. v. Fast Food Operators, Inc.</u>, 891 F.Supp. 1002, 1007 (D.N.J. 1995); <u>Bagdan v. Beck</u>, 140 F.R.D. 660, 668 (D.N.J. 1991); <u>G.F. Industries v. American Brands</u>, 245 N.J.Super. 8 (App.Div.1990). Where the moving party has established that the matters are

substantially related, the court will presume that the attorney has acquired confidential information from the former client relevant to the current proceeding. Reardon, 416 A.2d 852.

However, the substantially related test is not implicated until the movant shows that the "attorney was in a position where he could have received information which his former client might reasonably have assumed the attorney would withhold from his present client." Host Marriott, 891 F.Supp. at 1007 (quoting Allegaert v. Perot, 565 F.2d 246, 250 (2d Cir.1977)).

### i. CEPS Litigation

No conflict of interest exists under Rule 1.9 for Mr. Riordan's representation of Spinello Companies during the CEPS litigation because Mr. Stivaly and Metra were not Mr. Riordan's clients for purposes of that litigation and no attorney client relationship existed. The attorney client relationship begins with a non-lawyer's reliance on the professional skills of an attorney, who, in turn, knows of this reliance and accepts responsibility for it. In re Palmieri, 76 N.J. 51, 58 (1978). The relationship must be a mutually aware, consensual relationship. Ibid. The client must demonstrate from an identifiable action or manifestation reliance on an attorney in his professional capacity. Herbert v. Haytaian, 292 N.J.Super. 426, 436-37 (App.Div.1996). To complete the relationship, the attorney must accept professional responsibility for the undertaking. In re Palmieri, 76 N.J. at 58.

While communications between a lawyer and his client in the course of the attorney client relationship and in professional confidence, are privileged, N.J.S.A. 2A:84A-20, "[w]here two or more persons have employed a lawyer to act for them in common, none of them can assert such privilege as against the others at the communications with respect to that matter." N.J.R.E. 504(2); Historic Smithville Dev. Co. v. Chelsea Title and Guaranty Co., 464 A.2d 1177 (App.Div. 1983). Moreover, "[a] lawyer employed or retained to represent an organization

represents the organization as distinct from its directors, officers, employees, members, shareholders or other constituents." R.P.C. 1.13(a).

Mr. Stivaly and Mr. Solimine retained Mr. Riordan to represent the interests of Spinello Companies only, throughout the course of the CEPS litigation.  Mr. Stivaly's contact with Mr. Riordan was entirely within the context of his position as president of Spinello Companies.  No reasonable expectation of privacy existed that would create a confidential relationship between Mr. Stivaly and Mr. Riordan to the exclusion of Mr. Solimine and Spinello because any confidential information revealed during the CEPS litigation was between Spinello's counsel and Spinello's president.  Defendants focus a great deal on Mr. Stivaly's conversations with Mr. Riordan in preparation for his deposition and the confidential information exchanged regarding the business plan and bidding practices of Metra Industries.  Ignoring for a moment the fact that Defendants failed to provide any concrete examples beyond mere generalizations of confidential information revealed to Mr. Riordan, all exchanges were for the benefit of Spinello Companies, Mr. Riordan's client and Mr. Stivaly's employer.   Even the information allegedly disclosed to Mr. Riordan regarding Metra's businesses practices was disclosed for the benefit of Spinello Companies.  When Mr. Stivaly revealed this confidential information, it was highly unlikely that he intended the information to remain confidential to the exclusion of Mr. Solimine, his business partner at the time.  Mr. Stivaly had no reasonable expectation of privacy regarding these conversations to the exclusion of Mr. Solimine or Spinello Companies when they were made and cannot claim they are confidential now.

All Mr. Stivaly's actions throughout the CEPS litigation were to further the litigation for the benefit of Spinello Companies.  The fact that Mr. Stivaly signed the release in an individual capacity does not make him a party to the litigation or change the relationship between himself

and Mr. Riordan.  Metra and Mr. Riordan did not enter into an attorney client relationship for the purpose of any disclosures made by Mr. Stivaly during the CEPS litigation.  Therefore, Mr. Stivaly made none of those disclosures in confidence or subject to the attorney client privilege to the exclusion of Spinello Companies, Mr. Solimine or Emar Group.

Mr. Riordan has not violated Rule 1.9 through his representation of Spinello Companies in the CEPS litigation and subsequent representation in the present action.  No attorney client relationship existed between Defendants, the alleged former clients, and Mr. Riordan.  The Court does not need to address the substantially related test because no attorney client relationship existed.  See Host Marriott, 891 F.Supp. at 1007; Allegaert, 565 F.2d at 250.

### ii.     *2001 Confidentiality Agreement*

Mr. Riordan's representation of Metra Industries to aid in drafting an employee Confidentiality Agreement is not related to this action and does not warrant disqualification under Rule 1.9.  Mr. Riordan entered into a very limited attorney client relationship with Metra for the sole purpose of aiding in drafting an employee Confidentiality Agreement.  Clearly, drafting an employee Confidentiality Agreement is not substantially related to this action for misappropriation of funds, usurping corporate opportunities or conversion.  Mr. Riordan's representation of Metra Industries is not substantially related to the present action despite the existence of an attorney client relationship and does not warrant disqualification under Rule 1.9.

### iii.    *2003 Subpoena*

Mr. Riordan's representation of Metra Industries in conjunction with the 2003 subpoena served on Metra and Spinello by the United States Attorney's Office for information regarding payments made to the City of Newark for security, police and traffic services is not a conflict of interest under Rule 1.9.  Unlike Mr. Stivaly's contact with Mr. Riordan in conjunction with the

CEPS litigation, an attorney client relationship did exist between Mr. Riordan and Metra Industries. However, the current matter is not substantially related to Mr. Riordan's representation of Metra Industries in responding to the subpoena. The subpoena did not address, and therefore Mr. Riordan's representation of Metra did not address, any issue that is related to this matter. Mr. Riordan's representation of Metra Industries in conjunction with the 2003 subpoena is not a conflict of interest under RPC 1.9 and does not require disqualification of Mr. Riordan.

      D.      **<u>Disqualification of Greenberg Traurig</u>**

The law firm of Greenberg Traurig is not disqualified from representing Plaintiffs because none of their attorneys, including Mr. Riordan are disqualified from representing Plaintiffs. Rule 1.10 provides:

> When lawyers are associated in a firm none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by RPC 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm. R.P.C. 1.10(a).

Defendants allege that J. Michael Riordan should be disqualified from representing Plaintiffs, and consequently so should his firm, Greenberg Traurig. However, as stated above, there is no basis to disqualify Mr. Riordan as counsel. Defendants have not alleged the disqualification of Greenberg Traurig based upon the actions of any other members of the firm except for Mr. Riordan. No member of Greenberg Traurig is disqualified from representing Plaintiffs, and therefore, there is no basis to disqualify the firm as a whole.

**IV.     CONCLUSION**

       For the foregoing reasons, it is on this 22nd day of June, 2006, hereby

ORDERED that Plaintiff's Motion to Disqualify is DENIED.


                                        s/Tonianne J. Bongiovanni
                                        **HONORABLE TONIANNE J. BONGIOVANNI**
                                        **UNITED STATES MAGISTRATE JUDGE**